# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana


**SEALED**

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The property known as:
6409 W Main St.
Houma, LA 70360

)
)
)
)
)
)
)

Case No. 20-mc-1547

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
    See Attachment A

located in the _____Eastern_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:
    See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Charlotte Green
*Applicant's signature*

Special Agent Charlotte Green, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____5/29/20____

City and state: New Orleans, Louisiana

*Judge's signature*

Honorable Dana M. Douglas, U.S. Magistrate Judge
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE | * | |
| APPLICATION FOR A SEARCH | | NO.  20-mc-1547 |
| WARRANT FOR: | * | |
| | | |
| THE PROPERTY KNOWN AS: | * | **FILED UNDER SEAL** |
| 6409 W Main St. | | |
| Houma, LA 70360 | * | |
| | | |
| | * | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Charlotte Green, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I provide this affidavit in support of an application for a search warrant under

Federal Rules of Criminal Procedure 41 for the physical search of:

> The residence located at 6409 W Main St., Houma, LA.  Steve MERGEY has
> been identified as an occupant of 6409 W Main St., Houma, LA. Investigative
> efforts, including physical surveillance, have identified the location as a one story
> home with tan siding, as more fully described in **Attachment A** to this affidavit,
> which is attached hereto, and fully incorporated herein by reference.

The evidence to be searched for is described specifically in the following paragraphs and in

**Attachment B**.

2.      I am a Special Agent (SA) with U.S. Immigration and Customs Enforcement

(ICE), Homeland Security Investigations (HSI) and am assigned to HSI Houma, LA.  As part of

my official duties, I have conducted and participated in investigations related to the sexual

exploitation of children.  During the course of these investigations, I have observed and reviewed

examples of child pornography in various forms of media, including computer media.  As part of

my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes

which involve the sexual exploitation of children pursuant to Title 18, United States Code, Sections 1466A, 2251, 2252, and 2252A.

3.      As part of my duties as an HSI Special Agent, I have gained experience conducting criminal investigations involving child exploitation and child pornography, and have participated in the execution of several search warrants in such investigations.

4.      The statements contained in this affidavit are based on my experience, training, and background as an HSI Special Agent, as well as information provided to me by other law enforcement officers involved in this investigation.  Based on the included information, your affiant believes there is probable cause for a search warrant for the premises described in **Attachment A** of this affidavit.

5.      Specifically, I have probable cause to believe that presently and/or at the time of this warrant's execution, property which is evidence relating to the unlawful possession and/or distribution and receipt of child obscenity, child pornography, and child erotica will be found inside the residence described in **Attachment A** to this affidavit. The items I have reason to believe will be found inside the residence constitute evidence of the commission of federal offenses relating to obscene visual representations of the sexual abuse of children, in violation of Title 18, United States Code, Section 1466A, to offenses involving certain activities relating to material involving the sexual exploitation of minors, in violation of Title 18, United States Code, Section 2252, and involving material constituting and containing child pornography, in violation of Title 18, United States Code, Section 2252A. Such items are evidence, contraband, the fruits of crime and things otherwise criminally possessed, and property designed or intended for use, or which is or has been used, as the means of committing a criminal offense. These items are described in Attachment B to this affidavit, which is attached hereto, and incorporated herein.

2

6.      Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that violations of Title 18, United States Code, Sections 1466A, 2252, and 2252A have been committed, and that

     a.      property that constitutes evidence of the commission of a criminal offense;

     b.      contraband, the fruits of crime, and things otherwise criminally possessed; and

     c.      property designed and intended for use, and which has been used as a means  of committing a criminal offense,

is located at 6409 W Main St., Houma, LA, described in **Attachment A** of this affidavit. The property to be seized pursuant to this warrant is described in **Attachment B** to this affidavit.

## THE INVESTIGATION- FACTUAL BACKGROUND

7.      HSI, Resident Agent in Charge, Houma, LA is conducting a cybercrime investigation the online solicitation of juvenile males.  In October 2019, RAC/HU received HSI Tip Line report no. 62567653921 from a tipster alleging that a young boy in the United Kingdom (UK Victim 1) was solicited for nude pictures by sex offender, Steve MERGEY.  The tipster reported that YouTube subscriber Benjamin Ben / Instagram user 1969STEVEM offered gift cards in exchange for nude pictures of UK V1.  The tipster also stated that MERGEY requested pictures of UK VI'S genitals.  The tipster also reported that MERGEY made a death threat towards UK V1 via a YouTube video as a warning to not report MERGEY. The video depicted MERGEY riding a bicycle near a funeral parlor and UK V1 would end up in a pine box if he reported the subject.

8.    On May 7, 2020, RAC/HU received information from the Oswego County Sheriff's Office, NY ("OCSO"), regarding the investigation of Steve MERGEY.  OCSO advised of the location and identification of three (3) potential victims of MERGEY'S online solicitation of juvenile males and provide additional investigation information.  This report contains information regarding Victim 1 (YR V1).

9.    On April 29, 2020, OCSO responded to a complaint made by the parent of Victim 1 ("YR V1") regarding an online predator.  OCSO met with the complainant and YR V1.  OCSO case no. 20-6672 and Incident no. 53008 relates.  The complainant stated that an unknown male reached out to her son, YR V1, and his friends via their YouTube channel.  The complainant stated that the YouTube channel contained videos of YR V1's friends (aged between 8 and 13 years old) playing the PlayStation video game, Fortnight. The unknown person, going by the name "Steve," offered to get the friends more followers and give away prizes. "Steve" sent naked images and requested naked images of YR V1 and his friends on Instagram.  Further, "Steve" asked for sexually explicit images and to have sexual intercourse over the phone and video chat with YR V1.

10.    YR V1 and "Steve" exchanged Instagram usernames, "Steve's" being identified by YR V1 as "little_ boi _blue_ 10."  YR V1 stated that he and "Steve" chatted over Instagram, but YR V1 could not see "Steve" because only the profile picture was displayed during the video chat.  YR V1 stated the voice on the video chat was an older male's voice despite "Steve" claiming to be 25 years old.  YR V1 stated that "Steve" attempted to entice him with gift cards and the promise of more social media followers.  YR V1 stated that eventually, "Steve" offered gift cards in exchange for phone sex or naked images.  YR V1 stated he hung up the call and blocked the account.

4

11.     The complainant, voluntarily provided OCSO with an Apple iPhone 11, the electronic device used by YR V1 to communicate with "Steve" and consented to forensic examination of the phone.  The complainant also provided consent for OCSO to assume the online identity of YR V1.  The phone was secured as evidence.

12.     On April 30, 2020, Fulton Police Department, ("FPD"), New York, assisted OCSO in contacting and locating the parent of Victim 2 ("YR V2").  The complainant explained to FPD what she knew about the online solicitation of her son, Victim 2, by a predator.  FPD incident no. 2020-3264 relates.  The complainant stated she believed YR V2 is gay and YR V2 believes he is the suspect's boyfriend. The complainant stated that she took away all of YR V2's electronic devices.  FPD requested to interview YR V2, and the complainant agreed to the interview.  The complainant also voluntarily surrendered a Samsung Galaxy J3 Luna cell phone primarily utilized YR V2 to communicate with the predator.  The complainant provided consent to search the device.

13.     On May 1, 2020, OCSO transported YR V2 to their office to conduct an interview regarding the online solicitation by a predator. YR V2 was escorted to the Juvenile interview room.

14.     YR V2 stated he was aware he was being interviewed due to his communication with an older man named "Steve MERGEY" in Louisiana.  YR V2 advised that he encountered MERGEY when MERGEY added YR V2 to a group on Instagram.  YR V2 stated he and MERGEY started out chatting about games.  MERGEY disclosed that he was gay and asked YR V2 to be his boyfriend.  YR V2 stated that MERGEY began sending pictures of male genitals. YR V2 stated that MERGEY also sent child pornography of children between the ages of 6-18. YR V2 stated that "it was really obvious they were young kids."  YR V2 described the pictures

as being always juvenile boys with the images focused on the groin area.  YR V2 stated that

MERGEY sent YR V2 Xbox gift cards.  YR V2 described MERGEY as a sixty-year-old male,

short grey hair, unshaved, with glasses.  YR V2 stated the MERGEY lives across from a Buick

GMC car dealership and resides with his parents.

15.    YR V2 provided OCSO consent to assume his online social media accounts along

with usernames and passwords.

16.    Investigation has revealed that MERGEY is the user/subscriber of the following

Instagram accounts: "little_boi_blue_10"; "Fishyfishyfishyinthewater"; "1969STEVEM";

"1969STEVEM5" and "memb_rane123."  On these Instagram accounts, MERGEY'S primary

course of communication with other users is via live stream video.  During live streams,

MERGEY displays that he is the sole operator of the accounts by holding constant conversation

with other users, repeatedly displaying his face, and by showing interior and exterior features of

his residence that match the structure at 6409 W Main St., Houma, LA, MERGEY'S residence.

While live streaming, MERGEY provides video throughout his residence, often leading from

inside the residence to outside the residence, displaying interior rooms such as the kitchen,

bedroom, and the utility room and exterior surrounding property, including the Buick GMC car

dealership across from the residence and Bayou Terrebonne behind it.  MERGEY conducts many

live streams from his bedroom where MERGEY is usually propped up in his bed and covered by

a red and white striped comforter.  The bedroom can be described as containing wood wall

paneling, a window that faces the bed with black curtains, and a storage cabinet with white trim

and dark doors.  The image of the person operating the accounts during live streams matches the

photograph affixed to Louisiana ID 5770857 assigned to MERGEY.

17.     In May 2020, OCSO advised RAC/HU that they began monitoring and communicating with MERGEY in an undercover capacity via MERGEY'S "little_boi_blue_10," "fishyfishyfishyinthewater," and "memb_rane123" Instagram accounts.  OCSO took on the persona of a 13 year old juvenile male in their communication with MERGEY.  During the course of the Instagram messaging, MERGEY distributed a variety of lude images and videos of the genitals of pre-pubescent males as well as images of MERGEY's genitals and/or videos of him masturbating to OCSO.  Based on previous video exhibitions of his residence by MERGEY, OCSO investigation indicates that MERGEY is located in his bedroom during these communications located at 6409 W Main St., Houma, LA in these videos.  MERGEY also distributed lude cell phone screen shots of minor victim's genitals to OSCO evidently taken during previous messaging with other victims.  The following are examples of images/videos distributed by MERGEY to OSCO:

- MERGEY distributed pictures depicting the penis of a pre-pubescent male that MERGEY identifies as an eleven year old.
- MERGEY distributed screen shots of a prior text messaging conversation with a pre-pubescent male.  Included in the messages are 3 photos of the male juveniles' penis.
- MERGEY distributed screen shots of a teenage male displaying his penis. MERGEY identified the child as 15 years old and claims to have had phone sex with the victim.  The screen shots are taken during Instagram messaging, which depict a split screen between the two parties, MERGEY'S video and the victim's video.

18.     On May 15, 2020, at approximately 2400 hours, RAC/HU observed MERGEY utilizing Instagram account "fishyfishyfishyinthewater," MERGEY conducts a live stream video at his residence from his bedroom.  MERGEY displayed his face on numerous occasions and showed images of the bedroom that are consistent with the residence at 6409 W Main St.,

Houma, LA 70360.  During the live stream, MERGEY appeared to be in an argument with

another Instagram user.  MERGEY turned on an additional electronic device and live streamed

images displayed on the second device.  The two (2) images depicted male penises.  MERGEY

verbally described the images as that of a twelve year old boy.

19.     On May 15, 2020, a Federal Grand Jury subpoena was issued out of the Eastern

District of Louisiana to Instagram for subscriber information associated with aforementioned

social media accounts utilized by MERGEY.  On the same date, Instagram provided the

following information for accounts located:

Account: 1969STEVEM
First/Last Name: Zombay
Email: zombayilove@gmail.com
Vanity Name: zombayyyyy
Registration Date: 2019-06-08 14:11:11 UTC
Registration IP: 2601:3c3:c000:1910:d036:550c:3f61:6864
Ph no.:  19858568118

Account: fishyfishyfishyinthewater
First/Last Name: Unknown
Email: Unknown
Vanity Name: fishyfishyfishyinthewater
Registration Date: 2020-03-03 19:09:16 UTC
Registration IP: 2600:387:1:817::71
Ph no.:  19858568118

Account: little_boi_blue_10
First/Last Name: Unknown
Email: Unknown
Vanity Name: little_boi_blue_10
Registration Date: 2020-03-22 01:27:46 UTC
Registration IP: 2600:387:1:809::81
Ph no.:  19858568118

20.     On May 19, 2020, Department of Homeland Security Summons was issued to

AT&T for records and subscriber information pertaining to phone no. 19858568118, the no.

associated with the above Instagram accounts.  On the same date, AT&T complied with the

Summons and provided the following: requested information:

8

> Subscriber: Lydie Mergey
> Account no: 578089313481
> Address: 106 Cantrelle Dr Apt 2, Raceland, LA 70394
> Account open date: May, 20 2010

21.     Investigation indicated a familial relationship between Lydie Mergy and Steve

MERGEY.

## INFORMATION RELATED TO STEVE MERGEY

22.     Record checks through with the National Law Enforcement Telecommunications

System (NLETS) revealed the following driver's licenses for Steve MERGEY:

> Louisiana Driver's License no: 5770857
> Steve Charryl MERGEY
> 6409 West Main, Houma, LA 70360
> DOB 12/10/1969

23.     Criminal history checks through the National Crime Information Center revealed

FBI no. 824286NA8 relates to arrests and convictions of MERGEY.  On January 21, 2003,

MERGEY was convicted for violation Louisiana Revised Statute 14:92, contributing to the

delinquency of a juvenile by a sexually immoral act, four counts.  MERGEY was sentenced to

serve 2 years with the Louisiana Department of Corrections, suspended to one-year supervised

probation.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

24.     Based on my knowledge, training, and experience in child exploitation and child

pornography investigations, and the experience and training of other law enforcement officers

with whom I have had discussions, computers, computer technology, and the Internet have

revolutionized the manner in which child pornography is produced and distributed.

25.     Child pornographers can transpose photographic images from a camera into a

computer-readable format with a scanner.  With digital cameras, the images can be transferred

directly onto a computer.  A modem allows any computer to connect to another computer

through the use of telephone, cable, or wireless connection.  Through the Internet, electronic

contact can be made to literally millions of computers around the world.

26.     The computer's ability to store images in digital form makes the computer itself

an ideal repository for child pornography.  The size of the electronic storage media (commonly

referred to as the hard drive) used in home computers has grown tremendously within the last

several years.  These drives can store thousands of images at very high resolution.  In addition,

electronic devices such as smart phones (e.g., Apple iPhone, Samsung Galaxy), connected

devices (e.g., Apple iTouch), e-readers, and tablets (e.g., Apple iPad, Kindle Fire) now function

as computers with the same abilities to store images in digital form.

27.     The Internet affords collectors of child pornography several different venues for

obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

28.     Collectors and distributors of child pornography also use online resources to

retrieve and store child pornography, including services offered by Internet Portals such as

Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a

remote computing service that provides e-mail services as well as electronic storage of computer

files in any variety of formats.  A user can set up an online storage account from any computer

with access to the Internet.  Evidence of such online storage of child pornography is often found

on the user's computer.  And even in cases where online storage is used, evidence of child

pornography can be found on the user's computer in most cases.

29.     As with most digital technology, communications made from a computer are

often saved or stored on that computer.  Storing this information can be intentional, for example,

by saving an e-mail as a file on the computer or saving the location of one's favorite websites in

"bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path

10

of an electronic communication may be automatically stored in many places, such as temporary

files or ISP client software, among others.  In addition to electronic communications, a computer

user's Internet activities generally leave traces in a computer's web cache and Internet history

files.  A forensic examiner often can recover evidence that shows whether a computer contains

peer-to-peer software, when the computer was sharing files, and some of the files that were

uploaded or downloaded.  Computer files or remnants of such files can be recovered months or

even years after they have been downloaded onto a hard drive, deleted, or viewed via the

Internet.  Electronic files downloaded to a hard drive can be stored for years at little or no cost.

Even when such files have been deleted, they can be recovered months or years later using

readily available forensic tools.  When a person "deletes" a file on a home computer, the data

contained in the file does not actually disappear; rather, that date remains on the hard drive until

it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in

free space or slack space – that is, in space on the hard drive that is not allocated to an active file

or that is unused after a file has been allocated to a set block of storage space – for long periods

of time before they are overwritten.  In addition, a computer's operating system may also keep a

record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via

the Internet are automatically downloaded into a temporary Internet directory or "cache."  The

browser typically maintains a fixed amount of hard drive space devoted to these files, and the

files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus,

the ability to retrieve residue of an electronic file from a hard drive depends less on when the file

was downloaded or viewed than on a particular user's operating system, storage capacity, and

computer habits.

## CHARACTERISTICS OF PERSONS WHO DISTRIBUTE, TRANSPORT, RECEIVE, OR POSSESS CHILD PORNOGRAPHY

30.     Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt, distribution, and possession of child pornography:

a.     Persons who receive, distribute, and possess child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     Persons who receive, distribute, and possess child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Persons who receive, distribute, and possess child pornography oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Persons who receive, distribute, and possess child pornography often retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.     Likewise, persons who receive, distribute, and possess child pornography usually maintain their collections that are in a digital or electronic format in a safe, secure and private environment. These collections are often maintained for several years and are kept close

12

by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e.     Persons who receive, distribute, and possess child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other persons who share their interest in child pornography; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.     Persons who receive, distribute, and possess child pornography prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.     With the ease of obtaining new images of child pornography and child obscenity, some persons who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, occasionally delete their images and obtain new material, in a continuing cycle.  Even when they engage in this pattern of conduct, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  A forensic examiner can often recover evidence indicating whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

31.     In consideration of the foregoing, I respectfully request that this Court issue a warrant authorizing the search of 6409 W Main St., Houma, LA 70360, more fully described in

13

**Attachment A** of this affidavit, and any computers and associated devices contained therein, for

the items, materials, and records more specifically identified in **Attachment B** of this affidavit.

32.     It is further respectfully requested that this Court issue an Order sealing, until

further order of this Court, all papers submitted in support of this Application, including the

Application, Affidavit, and Search Warrant, and the requisite inventory notice (with the

exception of one copy of the warrant and the inventory notice that will be left at the residence

located at 6409 Main St., Houma, LA 70360. Sealing is necessary because the items and

information to be seized are relevant to an ongoing investigation and premature disclosure of the

contents of this affidavit and related documents may have a negative impact on this continuing

investigation and may jeopardize its effectiveness.

Respectfully submitted,

 /s/ *Charlotte Green*
Charlotte Green
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations


Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial
officer has on this date considered the information communicated by reliable electronic means in
considering whether a complaint, warrant, or summons will issue.  In doing so, I have placed the
affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or
summons and affidavit are those of the affiant, that the document received by me is a correct and
complete copy of the document submitted by the affiant, and that the information contained in
the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's
knowledge.

Subscribed and sworn to before me on
this 29th day of May, 2020
in New Orleans, Louisiana.

HONORABLE DANA M. DOUGLAS
UNITED STATES MAGISTRATE JUDGE

14

**ATTACHMENT A**

**DESCRIPTION OF PREMISES TO BE SEARCHED**

6409 W Main St., Houma, LA 70360 is described as a one story home with tan siding.

The premise to be searched includes all rooms, attics, closed containers, and other places therein,

and the surrounding grounds, under the control of the occupants of 6409 W Main St., Houma,

LA. The premises to be searched also include any vehicles under the control of the occupants of

the residence, which may contain any of the items of evidence described in **Attachment B**

hereto.





**ATTACHMENT B**
**ITEMS TO BE SEARCHED FOR AND SEIZED**

This affidavit is in support of an application for a warrant to search the premises known as 6409 W Main St., Houma, LA, which is more specifically identified in Attachment A, hereto, including any 'computers, associated storage devices and/or other devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of Title 18, United States Code, Sections 1466A, 2252, and 2252A, which criminalizes, in part, the possession, receipt and distribution of child obscenity and child pornography (defined in Title 18, United States Code, Section 2256), as more specifically identified below:

1.       Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems, hard drives, terminals (keyboards and display screens) and other computer related operation equipment, in addition to computer photographs, digital graphic file formats and/or photographs, slides or other visual depictions of such digital graphic file format equipment that may be, or are, used to visually depict child obscenity, child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children, or the distribution, possession, or receipt of child obscenity, child pornography, or child erotica.

2.       Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3.      Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items.

4.      Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages), pertaining to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct: as defined in Title 18, United States Code, Section 2256.

5.      In any format and media, all originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica, or child obscenity.

6.      Any and all records and materials, in any format and media, (including, but not limited to, envelopes, letters, papers, e-mail, chat logs, and electronic messages) identifying persons transmitting through interstate or foreign commerce, including via computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 256, child erotica, or child obscenity.

7.      Any and all records and materials, in any format and media, (including, but not limited to, envelopes, letters, papers, e-mail, chat logs, electronic messages, other digital data files and web cache information), bearing on the receipt, shipment, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica, or child obscenity.

8.      Records of communication (as might be found, for example, in digital data files) between individuals concerning the topic of child pornography, the existence of sites on the Internet that contain child pornography, or that cater to those with an interest in child pornography,

2

as well as evidence of membership in online clubs, groups, services, or other Internet sites that provide, or make accessible, child pornography to its members and constituents.

9.      Evidence of association, by use, subscription, or free membership, with online clubs, groups, services, or other Internet sites that provide, or otherwise make accessible, child pornography.

10.      Evidence of any online storage·, e-mail, or other remote computer storage subscription, to include unique software associated with such subscription, user logs, or archived data, that show connection to such service, and user login and passwords for such service.

11.      Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

12.      Records, in any format or media, evidencing ownership or use of computer equipment and paraphernalia found in the residence to be searched, including, but not limited to, sales receipts, registration records, records of payment for Internet access, records of payment for access to news groups or other online subscription services, handwritten notes, and handwritten notes in computer manuals.

13.      The contents of any computer files located on any computer hard drive or any other form of computer storage media, depicting any child engaged in sexually explicit conduct, depicting any child obscenity or child erotica, or relating to the collecting, receipt, or distribution of any such images.

14.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of by use of the computer or by other means for the purpose of distributing or receiving child obscenity or child pornography as defined

3

in 18 U.S.C. Section 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. Section 2256(2).

15.     Any routers or other devices capable of providing Internet access to any computer, together with any data contained therein.

16.     Any Xbox, PlayStation, Nintendo, or other device capable of connecting to the Internet and storing digital files and images.

17.     Any cameras and/or video recorders capable of storing digital files and images.

18.     Any and all items capable of storing digital files and images, including, but not limited to, CDs, DVDs, thumb drives, cellular telephones, iPads, iPod Touch, flash drives, mobile electronic devices, and multimedia cards.